## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ELAINE M. CARON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 16-15M |
| | : | |
| FEDEX FREIGHT, INC., | : | |
| Defendant. | : | |

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Elaine Caron alleges that she was discriminated against while working for Defendant FedEx Freight, Inc. ("FedEx"), on account of her gender, age, disability or perceived disability and in retaliation for earlier complaints of discrimination.  While Plaintiff worked for FedEx from 1996 until August 14, 2013, most of that time falls into a period that is foreclosed from judicial scrutiny by a binding settlement agreement; because of the settlement, her claims are limited to employment practices that occurred during a brief six-week period in the summer of 2013 after she was reinstated and before she left because of a medical condition that restricted her from working at all.  In its second motion to dismiss (ECF No. 20)[1] brought pursuant to Fed. R. Civ. P. 12(b)(6), FedEx seeks the dismissal of Plaintiff's First Amended Complaint ("Complaint") (ECF No. 12), arguing that the facts alleged to have occurred during the short period in issue are insufficient to state a claim for which relief may be granted.

FedEx's motion has been referred to me for report and recommendation.  Based on the determination that Plaintiff's claims have enough heft to give rise to a plausible claim for relief, I recommend that the motion be DENIED.

---

[1] The first motion to dismiss (ECF No. 7) was mooted by Plaintiff's filing of her Amended Complaint, which dropped all claims based on discriminatory conduct prior to the 2013 settlement agreement.  See ECF No. 17.

I.     **Background**

When she filed her Complaint, Plaintiff was 58 years old.  ECF No. 12 ¶ 11.  She had

been hired by FedEx in 1996 as a part-time driver and transferred to the freight division as a City

Driver in 2007.  ECF No. 12 ¶ 12.  Since 2007, despite her satisfactory performance, she alleges

that she has consistently been subjected to discriminatory treatment.  ECF No. 12 ¶ 13.

Plaintiff's allegations regarding the events prior to the 2013 settlement may be briefly

summarized.  She claims that younger, male employees were permitted to bid on routes, vehicles

and shifts before Plaintiff was allowed to bid, despite her seniority.  ECF No. 12 ¶¶ 15-18.  After

she complained to the human resources department in 2008 about these adverse actions, the

treatment got worse.  ECF No. 12 ¶¶ 19, 21.  She was provided with broken and old equipment,

and given particularly onerous tasks.  ECF No. 12 ¶ 21.  In September 2009, Plaintiff injured her

elbow at work and took a medical leave of absence.  ECF No. 12 ¶ 22.  After she returned to

work in April 2010, she bid on and received a Road Driver position, but was assigned the oldest

equipment and the least desirable routes.  ECF No. 12 ¶¶ 23-24, 26-28.  In at least one instance, a

coworker referred to her as "bitch."  ECF No. 12 ¶ 28.  In June 2010, Plaintiff injured her arm

again and went on medical leave.  ECF No. 12 ¶ 29.  On April 3, 2012, while she was still on

medical leave, FedEx terminated her.  ECF No. 12 ¶ 31.

Based on these events, in December 2012, Plaintiff filed a charge of discrimination with

the Rhode Island Commission on Human Rights and the Equal Employment Opportunity

Commission, alleging that she was terminated because of "her sex, age and/or disability."  ECF

No. 12 ¶ 32.  On February 25, 2013, Plaintiff and FedEx entered into the settlement agreement.

The settlement required FedEx to reinstate her with full seniority and to refrain from

discriminating against her or retaliating against her for bringing the complaint.  ECF No. 12 ¶ 33.

At the time of the signing of the settlement agreement, Plaintiff was still on medical leave, recovering from surgery on her arm.  ECF No. 12 ¶ 34.

On June 26, 2013, Plaintiff returned to work on light duty.  ECF No. 12 ¶ 35.  She was cleared for full duty work on July 24, 2013.  ECF No. 12 ¶ 36.  After she was reinstated and despite having been cleared to work, Plaintiff alleges that the injury to her arm constituted a disability of which FedEx was aware and/or that FedEx perceived her as being disabled as a result of her arm injury.  ECF No. 12 ¶¶ 37-41.  Based on her perceived/actual disability, her sex and her age, Plaintiff claims that FedEx resumed the pattern of discriminatory actions against her, now coupled with retaliatory actions based on the prior complaint.  ECF No. 12 ¶¶ 42-44.  Specifically, Plaintiff alleges that her hours were cut; her seniority was ignored; FedEx refused to train her; her schedule and routes were changed at the last minute; she was assigned less desirable routes than her male colleagues; and, on a day when four younger male drivers with less seniority were assigned shifts, she was told not to report due to a lack of work.  ECF No. 12 ¶ 43.  In one instance when she asked about a route change, her supervisor told her that she was "so f**ked."  Id.

Less than two months after she was reinstated, on August 14, 2013, Plaintiff again "was medically restricted from working" because of her arm injury; she has not returned to work since.  ECF No. 12 ¶ 45.  The Complaint does not allege that the work stoppage in August 2013 was caused by an actionable adverse employment action.  She filed this lawsuit on January 15, 2016.

Plaintiff's Complaint sets forth six causes of action: Count I for discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq.; Count II for discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29

U.S.C. § 621, et seq.; Count III for discrimination and retaliation on account of disability or perceived disability in violation of the Americans with Disabilities Act of 1990, 42 U.S. § 1201, et seq.; Count IV for discrimination and retaliation based on gender, age and/or disability or perceived disability in violation of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, et seq.; Count V for discrimination and retaliation based on gender, age and/or disability or perceived disability in violation of the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws § 42-112-1, et seq.; and Count VI for discrimination and retaliation in violation of the Rhode Island Civil Rights of People with Disabilities Act, R.I. Gen. Laws § 42-87-1, et seq. Plaintiff seeks a declaratory judgment that FedEx discriminated against her, a permanent injunction preventing it from discriminating in the future, compensatory and punitive damages, and attorneys' fees.  ECF No. 12.

## II.     Standard of Review

Defendant moves to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  In considering a Rule 12(b)(6) motion, a court must accept as true all allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  The United States Supreme Court has recently restated the review standard as follows: "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 546 (2007).  Since Twombly, the Supreme Court further refined its requirements in Ashcroft v. Iqbal:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

4

556 U.S. 662, 663 (2009).  In applying this standard to facts as pled in a complaint, the First

Circuit recommends what it calls "a two-step pavane."  Rodriguez-Reyes v. Molina-Rodriguez,

711 F.3d 49, 53 (1st. Cir. 2013).  The Court must first identify and disregard the complaint's

conclusory legal allegations, and then determine whether or not the remaining factual allegations

state a plausible claim to relief.  Id.

        Plaintiff argues that the Twombly/Iqbal pleading standard is not applicable to

employment discrimination cases in reliance on this Court's decision in Mayale-Eke v. Merrill

Lynch, 754 F. Supp. 2d 372 (D.R.I. 2010).  This asseveration misstates the applicable standard of

review.  Mayale-Eke did not reject Twombly/Iqbal for employment cases; rather, it struggled to

harmonize the Twombly/Iqbal plausibility requirement with a pre-Twombly/Iqbal Supreme

Court decision, Swierkiewicz v. Sorema, 534 U.S. 506 (2002), which held that an employment

discrimination plaintiff need not plead the existence of a *prima facie* case.  Id. at 510 (*prima

facie* case is evidentiary, rather than pleading, standard).  Mayale-Eke solved the puzzle by

holding that "a complaint need not establish a *prima facie* case of employment discrimination to

survive a motion to dismiss, but the claim must be facially plausible."  754 F. Supp. 2d at 377.

More recently, the First Circuit clarified further in Rodriguez-Reyes v. Molina-Rodriguez:

> Iqbal does not mention, but is wholly consistent with Swierkiewicz; there, the
> Court stressed that, notwithstanding the neoteric plausibility standard, no 'detailed
> factual allegations' are required in a complaint," although the elements of a *prima
> facie* case "are part of the background against which a plausibility determination
> should be made.

711 F.3d at 54.  Thus, even though this is an employment discrimination case, it is beyond cavil

that Twombly/Iqbal supplies the applicable standard of review.  The inquiry for this Court is

whether the non-conclusory factual allegations in this Complaint state a plausible claim.

**III.**   **Analysis**

FedEx's principal argument in favor of dismissal focuses on what it asserts is the Complaint's near-exclusive reliance on pre-settlement facts that cannot be the basis for liability. These facts consume three pages and fourteen paragraphs, while the post-settlement conduct is pled on one page in one paragraph.  Based on the Complaint's heavy emphasis on pre-settlement events and its skimpy treatment of post-settlement facts, FedEx argues that it conflates pre-settlement conduct with post-settlement conduct.  And when the pre-settlement conduct is stripped away, FedEx contends, what remains is so utterly devoid of factual content as to be insufficient to permit the plausible inference of any adverse employment action based on discriminatory or retaliatory animus.

In response, Plaintiff does not dispute that events from her hire by FedEx until the date of the settlement agreement, February 25, 2013, cannot form an independent basis for liability; she concedes that she not seeking relief for any conduct during that period.  ECF No. 21-1 at 7. Nevertheless, she explains that she included a relatively lengthy recitation of the pre-settlement facts for three reasons, which buttress her contention that the Court may consider these facts in testing the plausibility of her claims.  When read with the pre-settlement facts as an appropriate backdrop, she argues, the factual allegations regarding post-settlement events may be limited, because the period when she was working was limited (only six weeks), but are enough for a plausible claim.

In justifying her heavy reliance on the pre-settlement facts, Plaintiff argues, first, that the Complaint properly recounts the pre-settlement events as factual background for the actionable events in the summer of 2013.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (Title VII did not "bar an employee from using the prior acts as background evidence in support of a timely claim."); Andujar v. Nortel Networks, Inc., 400 F. Supp. 2d 306, 330 (D. Mass. 2005)

(earlier time-barred actions admissible as background evidence for proof of hostile work environment, although damages not recoverable for those actions).  Second, she points out that her pre-settlement complaint of discrimination culminating in the settlement agreement forms the basis of her present claim of retaliation; thus, the pre-settlement facts are squarely germane in the present case.  See Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013) (retaliation claim relies on demonstration that plaintiff engaged in protected conduct).  Third, the treatment that Plaintiff complains of after the 2013 settlement is similar to the treatment that triggered her 2012 complaint to the Rhode Island Commission on Human Rights; thus, the prior conduct is a lens through which the potentially actionable conduct may be viewed and understood.

Plaintiff's explanation for how this Court should interpret her Complaint, "[a]pplying common sense and reading [it] holistically," is consistent with the light touch required at the Rule 12(b)(6) phase.  Reilly v. Cox Enters., Inc., No. CA 13-785S, 2014 WL 4473772, at *5-9 (D.R.I. April 16, 2014).  While FedEx is unquestionably right that the Court must examine the plausibility of the Complaint based on what is alleged to have occurred in the summer of 2013, Plaintiff is right that the task may be performed with the pre-settlement facts as relevant background, including that the Court should consider those facts as the foundation for the claim of retaliation and as a framework that renders plausible the allegation that the treatment to which Plaintiff claims she was subjected in the summer of 2013 was discriminatory and retaliatory. The apportionment of most of the text of the Complaint to the pre-settlement background facts does not render the operative allegations insufficient as long as they plausibly state a claim.

Before turning to the task of examining the plausibility of the post-settlement facts, I pause briefly to review the relevant law.  To prevail on an employment discrimination claim, whether for gender, age or disability, under any of the laws cited by Plaintiff in her Complaint,

she must prove that she is a member of a protected class, that she performed her job satisfactorily (with or without accommodation for disability), and that she was subject to an adverse employment action, causally related to her protected status, to which other employees, not from the protected class, were not subject.  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311-12 (1996) (age discrimination under ADEA); Lang v. Wal-Mart Stores East, 813 F.3d 447, 454 (1st Cir. 2016) (disability discrimination under ADA); Lockridge v. The Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir. 2010) (gender discrimination under Title VII); Kriegel v. R.I. Dep't of Corrs., 266 F. Supp. 2d 288, 297 (D.R.I. 2003) (disability discrimination under R.I. Civil Rights of People with Disabilities Act); Casey v. Town of Portsmouth, 861 A.2d 1032, 1035-7 (R.I. 2004) (age discrimination in hiring under R.I. Fair Employment Practices Act and R.I. Civil Rights Act).

Determining whether an employer's action is materially adverse for purposes of discrimination claims requires a case-by-case analysis.  Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996).  Examples of adverse actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees."  Marrero v. Goya of P.R., 304 F.3d 7, 23 (1st Cir. 2002); see Koss v. Palmer Fire Dist. No. One, 53 F. Supp. 3d 416, 425 (1st Cir. 2014) (fact that plaintiff's hours were cut in half day after she met with attorney on her sexual harassment complaint is sufficient to establish causal connection).  For a successful retaliation claim, a plaintiff must show that she "undertook protected conduct," and that "her employer took a material adverse action against her."  Medina-Rivera, 713 F.3d at 139.  In the context of a retaliation claim, an adverse action is "material" if it would deter a reasonable employee from complaining about discrimination.  Id.

When the post-settlement facts are set into this legal mise-en-scène, Plaintiff's Complaint has enough to "nudge[ the] claims . . . across the line from conceivable to plausible." Iqbal, 556 U.S. at 680.  As the Twombly/Iqbal rubric requires, the first step is to strip away Plaintiff's many conclusory allegations of discrimination and to push into the background all factual allegations from the pre-settlement period.  What remains – drawn from a single paragraph – are the following factual allegations alleging specific adverse employment actions that she claims occurred during the six-week period after her return to work on June 26, 2013:

- Her hours were reduced, and younger, male drivers were assigned more hours than she was.

- FedEx refused to acknowledge her seniority for bidding purposes for equipment, routes, shifts and vacation days.

- Her supervisors refused to train her or assist her when switching her to new positions.

- She received a phone call at home from a supervisor telling her that she had to come in one hour earlier to fill a shift that was different than the one she had bid on and been assigned the previous day.

- When she reported to work and asked the supervisor about the change, he responded, "You are so f**ked."

- She was assigned less desirable routes despite having more seniority than many of her co-workers.

- On August 11, 2013, she was told not to report to work due to lack of work.  However, four younger, male drivers with less seniority were assigned shifts.

ECF No. 12 ¶ 43.

At the time of these events, all alleged to have occurred after the settlement agreement, Plaintiff was over forty years old and a female working in a predominantly male profession.  She had taken two medical leaves of absence, one lasting approximately six months and the other for over two years, for serious injuries to her elbow and arm, providing threshold plausibility to her allegations of a disability known to FedEx and to her contention that FedEx perceived her as

disabled. She alleges, and I accept for purposes of this motion, that she performed her job satisfactorily. And she certainly has plausibly asserted that she had previously undertaken "protected conduct" sufficient to support her claim that her treatment during the post-settlement period – so similar in kind to the pre-settlement treatment – was in retaliation for the successful prosecution of the claim of discrimination before the Rhode Island Commission for Human Rights. See Rodriguez-Vives v. P.R. Firefighters Corps, 743 F.3d 278, 285 (1st Cir. 2014) (although some of claimant's post-reinstatement treatment may be seen as no more than "petty slights or minor annoyances," "cumulatively these allegations plausibly paint a picture that would allow a factfinder to find . . . conduct sufficient to deter a reasonable person from challenging [the employer's] discriminatory hiring practices").

To clear the Fed. R. Civ. P. 12(b)(6) hurdle, all that Plaintiff needs to show are facts sufficient to make the non-innocent explanation of the events plausible. Reilly, 2014 WL 4473772, at *6. When this Complaint is read holistically, with a dash of common sense and with the pre-settlement facts as backdrop, these post-settlement facts clear the bar. See id., at *5. I conclude that Plaintiff has stated sufficient non-conclusory factual allegations to permit the Court to draw the plausible inference that she was subjected to discrimination and retaliation after she returned to work at FedEx on June 26, 2013. Because the totality of the circumstances alleged are enough to paint a picture of discriminatory and retaliatory treatment during the brief period after she was reinstated and working during the summer of 2013, I recommend that this Court deny FedEx's motion to dismiss.

## IV.   Conclusion

Based on the foregoing, I recommend that Defendant FedEx Freight, Inc.'s motion to dismiss Plaintiff's Complaint (ECF No. 20) be DENIED. Any objection to this report and

recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 3, 2016